This is a suit by a depositor in the savings department of the defendant bank to recover the sum of $167 which he alleges was withdrawn from his account by an unauthorized person. The defense of the bank is that, while it permitted the withdrawal from the account by a person other than plaintiff, it was within its rights in so going for the reason that the party requesting the withdrawal presented to it the savings account passbook which had been issued to plaintiff; that, furthermore, the party presenting the book was the authorized agent of the plaintiff and that it is not responsible, in any event, because the payment was made in good faith and without negligence on the part of its officers and employees.
After a trial in the lower court on this issue, there was judgment in favor of plaintiff for the amount claimed. The defendant has appealed from the adverse decision.
The record reveals the following facts which are not disputed by the parties. On January 9, 1939, plaintiff, who is a resident of Gretna, Louisiana, was convicted in the United States District Court for the Eastern District of Louisiana for unlawfully dealing in the distribution of marijuana cigarettes and was sentenced to serve 21 months in the Atlanta penitentiary. At the time of his conviction, he had on deposit in a savings account with defendant, First National Bank of Gretna, the sum of $167.06. During the period of his incarceration, his savings account passbook was in the possession of his sister, Mrs. Walter Hattier, who apparently attended to his affairs and cared for his children and with whom he corresponded regularly. Prior to July 31, 1939, arrangements were made whereby plaintiff was able to file an application for parole which was subsequently granted to him after 10 months of confinement.
On July 31, 1939, Mrs. Hattier went to the defendant bank and requested it to pay Mr. Joseph Rosenberg, an attorney of New Orleans who had defended plaintiff at his trial in the Federal Court, the sum of $50 out of plaintiff's savings account. Upon the representation of Mrs. Hattier that plaintiff desired the withdrawal for the purpose of paying Mr. Rosenberg a fee for services to be rendered in connection with plaintiff's application for parole and the presentation of plaintiff's passbook (together with certain letters written by him), the bank acceded to her request and gave her a cashier's check, payable to the order of Mr. Rosenberg, for the sum of $50. On the following day, August 1st, Mrs. Hattier again repaired to the bank with plaintiff's passbook and withdrew the balance in plaintiff's saving account amounting to $117.06. This withdrawal was made by the issuance of another certified check, payable to Mr. Rosenberg, who (Mrs. Hattier informed the bank) was dissatisfied with the $50 payment and insisted upon payment of a larger amount for the services he was to render in connection with plaintiff's application for parole. Since the $117.06 withdrawal had the effect of closing out plaintiff's account, Mrs. Hattier delivered the savings passbook to the bank and it was subsequently destroyed by the latter.
After plaintiff was released on parole by the Federal authorities, he made demand upon the bank for payment of the $167.06 *Page 23 
which had been previously paid to Mr. Rosenberg upon Mrs. Hattier's representations. This suit followed the refusal of the bank to comply with his request.
[1] The bank primarily contends that it had the right, under its rules and by-laws, to permit Mrs. Hattier to withdraw funds from plaintiff's savings account merely upon her presentation of plaintiff's savings account passbook and without any order, written or otherwise, from him. The rule relied upon, which is printed in the savings passbooks issued to the depositors of the bank, provides:
"Article VII. The Pass book shall be the voucher of the depositor, and the possession of the Pass Book shall be sufficient authority to the bank to warrant any payment made and entered therein."
Rules and by-laws, such as the one above quoted, are generally recognized throughout this country as valid and binding upon the depositor. See 9 Corpus Juris Secundum, Banks and Banking, § 987, pages 1411 and 1412. But it is also established by the jurisprudence that, despite the incorporation of a rule that the bank is not liable for withdrawals made by persons presenting the bank book, the bank is required to exercise reasonable care in making payment to a person other than the depositor himself and it is liable for the failure to exercise such care. See 9 Corpus Juris Secundum, Banks and Banking, § 1006, pages 1429 and 1430. In 7 American Jurisprudence, Verbo "Banks", Section 618, page 447, it is stated:
"Such provisions, when reasonable and assented to by the depositor, are upheld by the courts as binding upon the parties. The usual provision is that payment made to a person presenting the passbook shall be good and valid on account of the depositor unless the book has been lost and notice of such loss has been given to the bank; such provision has been upheld as valid, and where there is no negligence on the part of thebank, the payment is binding upon the depositor." (Italics ours).
[2] It follows from the foregoing that the rule depended upon cannot protect the bank from liability where its officers and employees were guilty of negligence in making the payment. Consequently, in the instant case, since the agents of the bank knew that plaintiff was in the penitentiary at the time the funds were withdrawn, defendant is responsible, unless the evidence shows that Mrs. Hattier was duly authorized by plaintiff to make the withdrawals or unless, if not authorized, the representations made by her to the bank were of such a character as to lead a reasonably prudent person to believe that she did possess such authority. In other words, the burden was upon the bank to establish that it was free from negligence in permitting the withdrawal.
The evidence produced by the bank in support of its contention that the withdrawals were rightfully made consists of certain letters written by plaintiff to Mrs. Hattier, the latter's testimony and that of Mr. W.R. White, its cashier. Mrs. Hattier declared, in substance, that, when her brother was sent to the penitentiary, he obtained permission from the warden to correspond with her and that they corresponded regularly; that, about a month before his incarceration, plaintiff brought her his savings account passbook and a note payable to him by a Mr. Frank Langridge for safekeeping; that she also cared for his three children after he went to the penitentiary; that he had told her, before he went to the penitentiary, that he did not wish the Federal Government to find out that he had money in the bank or other assets because the marijuana cigarettes, which he had sold, were subject to tax and that he was afraid that the government might seize his assets for the payment of the tax which might be due; that, because of this, he could not mention anything about the bank in his letters; that he would use the name of his cousin, Elmer Weigel, who worked at the bank, or Dick White, the cashier, and that, when he did so, she would understand what he meant. She further says that, during March, April and May of 1939, plaintiff wrote to her concerning his application for parole and advised her to consult his lawyer, Mr. Rosenberg, about the parole papers; that, in accordance with his request, she went to see Mr. Rosenberg; that Mr. Rosenberg undertook to make out the parole papers and that he was desirous of obtaining a fee for his services; that she communicated this information to plaintiff and that plaintiff agreed to the payment of the fee, stating that she should get it from Elmer Weigel; that, conformably, she went to the bank and explained the matter to Mr. White; that she showed Mr. White the letters, which plaintiff had written to her, and also presented plaintiff's savings account *Page 24 
passbook; that the checks, hereinabove referred to which are payable to Mr. Rosenberg, were delivered to her by the bank and that she, in turn, gave the checks to Mr. Rosenberg. Mrs. Hattier's evidence is amply corroborated by the testimony of Mr. W.R. White, cashier of the bank, and also by several letters addressed to Mrs. Hattier by the plaintiff which were offered in evidence. In one of these letters, plaintiff states:
"Your letter of March 22nd was received and was glad to hear that all is well. Sophie, I told you that if you was not sure that Mr. Rosenberg could do something, not to give him any money; but if he could, go ahead and give it to him. Don't let the money stand in the way."
Plaintiff sought to rebut the evidence offered on behalf of the bank by testifying at the trial that his sister had no authority whatever to withdraw the funds from his account; that he did not give her his savings passbook; that, after he was convicted, his sister broke into his barber shop, took his bank book, $300 in cash and also a note for $500 on which she collected some money (without his authority) from the maker, Mr. Langridge; that Mr. Rosenberg did not perform any services in connection with his parole papers and that he made out these papers himself. Plaintiff's testimony was thoroughly discredited on cross-examination by counsel for the bank. When confronted with the letters which had been offered in evidence, he reluctantly admitted that he had written them to his sister and he was unable to explain many of the statements made therein which were in direct conflict with his assertions on direct examination.
[3] After a careful examination of the record, we are not only convinced that the defendant bank was free from negligence in making the payments to Mr. Rosenberg upon the evidence presented to it by Mrs. Hattier but that the latter was duly authorized by plaintiff to make the withdrawals from his saving account. A reading of the letters written by plaintiff reveals that, during the time of his incarceration in the Federal Penitentiary, Mrs. Hattier was keeping his children for him and was also attending to his business affairs. In many of these letters, he expresses his gratitude to her for what she has done for him. In another letter, he comments on the fact that she has received his parole papers and asks her who she is going to get to act as his parole advisor, suggesting that Mr. Archie Stumpf of Gretna, Louisiana might be willing to serve.
The officers and employees of the bank were well acquainted with the fact that plaintiff was in the Atlanta penitentiary; they also knew that Mrs. Hattier was taking care of his children and attending to his affairs and that Mr. Joseph Rosenberg was his attorney. Therefore, when Mrs. Hattier presented plaintiff's passbook to Mr. White (together with the letters written by plaintiff) and explained the purpose for which the money was being withdrawn, Mr. White had every reason to believe (as we believe) that Mrs. Hattier was fully authorized by plaintiff to cause the withdrawals to be made.
For the reasons assigned, the judgment appealed from is reversed and it is now ordered that plaintiff's suit be dismissed at his costs.
Reversed.